UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| JULIE ANN TREIB, | ) | CIV. 09-4108-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER DENYING IN PART AND |
| vs. | ) | GRANTING IN PART |
| | ) | DEFENDANTS' PARTIAL |
| DR. DENNIS J. GLATT and | ) | SUMMARY JUDGMENT MOTION |
| SANFORD CLINIC SURGICAL | ) | |
| ASSOCIATES, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Julie Ann Treib, sued defendant, Dr. Dennis J. Glatt, alleging

causes of action of medical negligence, violation of informed consent, and

battery and seeking compensatory and punitive damages. Treib also seeks

damages from Sanford Clinical Surgical Associates on a respondeat superior

theory. Defendants move for summary judgment on all claims except the

battery claim. Treib resists summary judgment on all claims except the medical

negligence claim. The motion is denied in part and granted in part.

## BACKGROUND FACTS

In the light most favorable to Treib, the nonmoving party, the facts are as

follows:

To relieve her suffering from hernias that were obstructing her colon,

Treib underwent surgery in June of 2008. Dr. Maresh performed the surgery in

an operating room under general anesthesia. The surgery included a bowel

resection and implantation of nylon mesh to repair the hernias. Treib developed an infection following the surgery. In July of 2008, Dr. Maresh went on leave and Sanford Surgical transferred Treib's case to Dr. Glatt. In August, Dr. Glatt performed surgery on Treib in an operating room with anesthesia to reopen the wound and clean out the infection. Treib continued to suffer from an infection. On November 11, 2008, Dr. Glatt performed another surgery on Treib in an operating room under anesthesia to remove the mesh, which he determined to be a source of Treib's inability to heal.

On November 20, 2008, Dr. Glatt reopened the wound site in Treib's hospital room without providing Treib with anesthesia. He also did not scrub for the procedure, did not wear a surgical mask or gown, and may not have worn gloves.

Before the November 20 procedure, Treib strenuously objected to Dr. Glatt's performing the procedure in her hospital room without anesthesia. Nurses present at the time also allegedly expressed their concerns about Dr. Glatt's actions. During the procedure, Treib experienced extreme pain, yelled out in pain, told Dr. Glatt to stop, and gripped her bed rails hard enough to bruise her hands.

Treib filed suit against Dr. Glatt and his employer, Sanford Surgical. She seeks compensatory damages for the pain and suffering she experienced during and after the procedure and punitive damages.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Only disputes over facts that might affect the outcome of the case will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate if a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court views the facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal citation omitted). Similarly, the nonmoving party receives "the benefit of all reasonable inferences to be drawn from the underlying facts" in the record. *Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

**DISCUSSION**

## I.     Medical Negligence Claim

Treib contends that defendants are liable under a theory of medical negligence. Defendants deny any liability under that theory because Treib failed to provide expert testimony that Dr. Glatt breached the standard of care. Treib does not resist summary judgment on this claim. Accordingly, summary judgment is granted on the medical negligence claim.

## II.    Informed Consent Claim

Treib argues that Dr. Glatt did not obtain her informed consent before performing the procedure in her hospital room without anesthesia. Defendants respond that Dr. Glatt did obtain Treib's consent before beginning the procedure.

In *Wheeldon v. Madison*, 374 N.W.2d 367 (S.D. 1985), the South Dakota Supreme Court announced the foundational rule for an informed consent claim. The South Dakota pattern jury instruction on informed consent, which is based on *Wheeldon*, sets out the following three elements: (1) the doctor treated the patient without first obtaining the patient's informed consent; (2) an undisclosed material risk occurred which caused injury to the patient; and (3) if the doctor had disclosed the undisclosed risk, a reasonable person in the patient's position would not have agreed to the proposed treatment. S.D. Pattern Jury Instruction (Civil) 20-70-90 (modified); *see also Wheeldon*, 374

N.W.2d at 374-75 (announcing the same substantive test for an informed consent claim); *Savold v. Johnson*, 443 N.W.2d 656, 659 (S.D. 1989) (same).

Under element one, a patient has a fundamental right to be informed about a medical procedure's material risks before undergoing that procedure. *Wheeldon*, 374 N.W.2d at 374. As Treib's doctor, Dr. Glatt owed Treib a duty to obtain her informed consent before opening her surgical wound. There exists genuine issues of material fact, however, as to whether Treib gave her informed consent. Defendants' Statement of Material Facts states, "Dr. Glatt disputes that Plaintiff expressed her desire not to have the wound procedure performed in her hospital room and disputes that he did not obtain Plaintiff's consent prior to the procedure." Docket 21 at 2. When asked by Treib's attorney, "But did you ask her consent to perform the procedure, sir," Dr. Glatt responded, "I would say yes." Docket 22-6 at 2. Later in his deposition, Treib's attorney again asked, "You didn't obtain a consent on November 20th then?" Docket 22-6 at 4. Dr. Glatt responded, "I obtained consent. I did not get a signed paper consent." Docket 22-6 at 4. Treib claims that not only did she not give consent, but that she vocally expressed her opposition to the procedure. Treib also contends that she screamed out in pain and told Dr. Glatt to stop during the procedure. When the issue of whether *any* consent was obtained is disputed, the jury should resolve questions of credibility between the patient and the doctor. *Savold*, 443 N.W.2d at 659; *see also Mueller v. Mueller*, 221 N.W.2d 39, 41 (S.D.

5

1974) (reasoning that the jury should determine an informed consent claim when there is a conflict of testimony). Consequently, genuine issues of material fact exist on whether Treib's informed consent was obtained prior to the procedure.

Element two requires a showing that the patient suffered injury from an undisclosed risk. *Wheeldon*, 374 N.W.2d at 376 ("Plaintiff must also demonstrate that the undisclosed risk manifested itself, causing the complained-of-injury . . ."). Treib argues that Dr. Glatt failed to disclose two material risks to her, the risk of pain from undergoing the procedure without anesthesia and the risk of infection from having the procedure performed in an unsterile hospital room instead of an operating room. As to the possibility of infection, there is no evidence that Treib experienced an additional infection because Dr. Glatt performed the surgery in Treib's hospital room. Regarding the possibility of pain, before opening her surgical wound, Dr. Glatt ordered a morphine drip to control Treib's pain. Even though she received morphine, Treib claims that she experienced extreme pain during the procedure. Whether Treib did experience pain involves a question of credibility, and, thus, should be presented to a jury.

Under element three, the South Dakota Supreme Court has held that patients have a fundamental right to know about the material risks inherent to a medical procedure before a doctor begins the procedure. *Wheeldon*, 374

N.W.2d at 374 (adopting the seminal case on viewing informed consent from a patient-centered standard, *Canterbury v. Spence*, 464 F.2d 772 (D.C. Cir. 1972)). A reasonable disclosure is "one which apprises the patient of all known material or significant risks inherent in a prescribed medical procedure, as well as the availability of any reasonable alternative treatment or procedures." *Id.* at 375 (citing *Cunningham v. Yankton Clinic, P.A.*, 262 N.W.2d 508, 511 (S.D. 1978), *abrogated on other grounds by* SDCL 15-2-14.3 (1979)). Material risks occur "when a reasonable person, in what the physician knows or should know to be the patient's position, would be likely to attach significance to the risk or risks in deciding whether to submit to the proposed medical treatment or procedure." *Id.* (citing *Canterbury*, 464 F.2d at 787 ("The scope of the standard is not subjective . . . it remains objective with due regard for the patient's information needs.")).

Treib has alleged sufficient facts to show that a reasonable person in her position, if that person had known that the morphine drip would not relieve the pain during the procedure and that surgery under anesthesia was an option, would not have consented to have the procedure done without anesthesia.

Defendants argue that Treib needs expert medical testimony to support her claim. Expert testimony in an informed consent case, however, is unnecessary when "the controversy centers around whether *any* information was given to" the patient. *Savold*, 443 N.W.2d at 659 (emphasis in original).

Instead, the "proper rule . . . is whether a reasonable person in [the patient's] position 'would not have agreed to the proposed treatment if adequately apprised beforehand of the material risk which resulted in [the] injury.' " *Id.* (second alteration in original) (quoting *Wheeldon*, 374 N.W.2d at 376). Because the issue here is whether Treib agreed to the medical procedure without anesthesia, she need not present expert testimony.

Defendants further argue that other jurisdictions have differentiated between informed consent claims based on a traditional battery theory from claims based in negligence,[1] and that Treib's claim only sounds in battery because she claims that she never gave any consent. But defendants have not conceded that Dr. Glatt failed to obtain Treib's consent. Instead, as stated above, Dr. Glatt testified that Treib did give consent to have the procedure performed in her hospital room with only a morphine drip and not anesthesia. Under these circumstances, when the controversy resolves around the question of whether *any* information was given to the patient, the South Dakota Supreme Court in *Savold* concluded that the informed consent claim should be submitted to the jury for resolution. *See* 443 N.W.2d at 659. As a result, the court does not need to reach the issue of whether a plaintiff is limited to a

---

[1] *See, e.g.*, *Christman v. Davis*, 889 A.2d 746, 749 (Vt. 2005); *Duncan v. Scottsdale Med. Imaging, Ltd.*, 70 P.3d 435, 439 (Ariz. 2003); *Saxena v. Goffney*, 71 Cal. Rptr. 3d 469, 475 (Cal. Ct. App. 2008).

battery claim when there is no dispute that a plaintiff did not consent to the procedure.

## III.  Respondeat Superior

Treib alleges that Sanford Surgical is liable under a respondeat superior theory for her battery and informed consent claims. A plaintiff is the master of her complaint. *BP Chems. Ltd. v. Jiangsu Sopo Corp.*, 285 F.3d 677, 685 (8th Cir. 2002). When issues with a complaint arise, courts construe the complaint liberally in the light most favorable to the plaintiff. *Smith v. Ouachita Technical Coll.*, 337 F.3d 1079, 1080 (8th Cir. 2003) (citing *Schmedding v. Tnemec, Co.*, 187 F.3d 862, 864 (8th Cir. 1999)). But a complaint must give fair notice of the alleged claims, meaning that a plaintiff must provide sufficient notice that she is seeking relief or making a claim on the cause of action alleged against the defendant. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806-07 (8th Cir. 2008); *see also* Fed. R. Civ. P. 8(a)(2), (3) (stating that plaintiffs must plead the relief sought and sufficient facts to support that relief). A plaintiff's failure to plead a claim against a defendant waives that claim. *See Netterville v. State of Mo.*, 800 F.2d 798, 802 (8th Cir. 1986).

In her complaint, Treib alleges medical malpractice (a negligence action) against Dr. Glatt in Count I, an informed consent violation (a negligence action) against Dr. Glatt in Count II, and then respondeat superior liability against Sanford Surgical in Count III "for the negligent conduct of Dr. Glatt." In

Count IV, Treib alleges a battery action only against Dr. Glatt and in Count VI generally seeks punitive damages from Dr. Glatt and Sanford Surgical.

Because Treib placed the respondeat superior claim after the two negligence claims alleged against Dr. Glatt and stated "negligent conduct of Dr. Glatt," she did not provide adequate notice to Sanford Surgical that she would seek damages for Dr. Glatt's intentional conduct (the battery claim) under a respondeat superior theory. Treib cannot plead a respondeat superior claim against Sanford Surgical for Dr. Glatt's battery in her brief opposing partial summary judgment.

Sanford Surgical also argues that it is not liable for Dr. Glatt's alleged violation of informed consent. Under the respondeat superior theory, employers are liable for an employee's negligent actions when those actions are completed in the course of employment. *See Rehm v. Lenz*, 547 N.W.2d 560, 566 (S.D. 1996) ("[I]t should be acknowledged that employers can be held responsible for the negligent acts of their employees under a respondeat superior theory, . . ."). The South Dakota Supreme Court has reasoned that an informed consent violation is a negligence cause of action. *See Wheeldon*, 374 N.W.2d at 374. Sanford Surgical is not entitled to summary judgment on the respondeat superior claim arising from the informed consent claim. Thus, summary judgment is granted to Sanford Surgical on the respondeat superior claim as to the battery claim, but is denied as to the informed consent claim.

**IV.    Punitive Damages**

**A.    Dr. Glatt**

Treib seeks punitive damages against both Dr. Glatt and Sanford Surgical. Dr. Glatt resists the punitive damages charge by arguing that he did not act with actual or presumed malice. South Dakota allows plaintiffs, in certain circumstances, to recover punitive damages. *Dahl v. Sittner*, 474 N.W.2d 897, 900 (S.D. 1991). Under SDCL 21-3-2, a plaintiff claiming punitive damages must show that "the defendant has been guilty of oppression, fraud, or malice, actual or presumed." If the plaintiff makes this showing, "the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant." SDCL 21-3-2; *see also Gross v. Kouf*, 349 N.W.2d 652, 654 (S.D. 1984) ("[T]he purpose of awarding punitive damages is to punish the wrongdoer . . . [T]his [punitive] award should serve as a warning to others").

Treib alleges punitive damages against Dr. Glatt on her informed consent and battery causes of action. To survive summary judgment, a plaintiff must prove to the court by a clear and convincing evidence standard that a reasonable basis exists to award punitive damages. *Dahl*, 474 N.W.2d at 902 (citing *Flockhart v. Wyant*, 467 N.W.2d 473, 475 (S.D. 1991)).

Treib claims that Dr. Glatt acted with malice, not oppression or fraud. On a malice theory, punitive damages are awarded if the plaintiff shows that the defendant acted with "either actual, malice in fact, or presumed, legal malice."

*Id.* at 900. "Actual malice is a positive state of mind, evidenced by the positive desire and intention to injure another, actuated by hatred or ill-will towards that person." *Id.* (citing *Gamble v. Keyes*, 178 N.W. 870, 872 (S.D. 1920)). "Presumed, legal malice, on the other hand, is malice which the law infers from or imputes to certain acts." *Id.* (citing *Hannahs v. Noah*, 158 N.W.2d 678, 682 (S.D. 1968)). An inference of malice may be made when the person acts willfully or wantonly and injures another. *Id.* "Willful and wanton misconduct demonstrates an affirmative, reckless state of mind or deliberate recklessness on the part of the defendant." *Tranby v. Brodock*, 348 N.W.2d 458, 461 (S.D. 1984). This is an objective, not subjective, standard. *Id.* Alternatively, a plaintiff can argue for punitive damages when the defendant acted "in reckless disregard" of the plaintiff's rights. *Isaac v. State Farm Mut. Auto. Ins. Co.*, 522 N.W.2d 752, 761 (S.D. 1994).

Treib does not claim actual malice, but rather argues for punitive damages under a presumed malice theory. She claims that Dr. Glatt showed a conscious disregard for her rights because he knew of her wishes, disregarded them, and knew that she would experience pain if he opened her surgical wound without anesthesia. Dr. Glatt responds that he ordered Treib to receive morphine to minimize any pain.

If the jury believes Treib that she resisted the procedure and that Dr. Glatt disregarded her resistance and deliberately opened her surgical

wound, the evidence would be sufficient to show malice. Treib, therefore, has alleged sufficient facts under a clear and convincing evidence standard for a jury to find that Dr. Glatt's actions give rise to punitive damages from Dr. Glatt.

## B.    Sanford Surgical

Treib also alleges punitive damages against Sanford Surgical for Dr. Glatt's alleged violation of informed consent. Sanford Surgical argues that Treib failed to plead sufficient facts under Federal Rule of Civil Procedure 8(a) for it to be liable for punitive damages. Sanford Surgical further contends that Treib's argument that Dr. Glatt was acting as a manager in her brief opposing partial summary judgment should have been pleaded earlier.

Federal Rule of Civil Procedure 8(a) sets forth the standard for a plaintiff's complaint. Plaintiffs must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," and must also allege "a demand for the relief sought," which may be brought in alternative forms of relief. Fed. R. Civ. P. 8(a)(2), (3). Courts view a complaint under a plausibility standard and require the complaint to state "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" supporting the stated cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009) (holding that *Twombly* applies to all civil proceedings, not just antitrust cases).

In Count V of her complaint, Treib argues for punitive damages against all defendants and alleges that "Dr. Glatt's conduct was in willful, wanton, and conscious disregard for the rights of Plaintiff." Docket 1, ¶ 28. Throughout her complaint, Treib argues that Dr. Glatt disregarded her express wishes not to have the procedure performed in her hospital room without anesthesia. She also alleges that Sanford Surgical is liable for Dr. Glatt's actions on a respondeat superior theory. Docket 1, ¶¶ 22, 23. Treib's complaint put Sanford Surgical on notice that she would seek punitive damages from Sanford Surgical for Dr. Glatt's actions. Accordingly, Treib alleged sufficient facts under Rule 8.

Sanford Surgical also argues that it cannot be liable for Dr. Glatt's conduct because he did not act in a managerial capacity. An agent's actions may be imputed to a principal for a plaintiff's punitive damages claim. *Dahl*, 474 N.W.2d at 903. South Dakota generally follows the complicity rule, which requires an employer's knowledge before it can be held liable for punitive damages under an agency theory. *Id.* at 902-03 (expressly rejecting the scope of employment rule). But the South Dakota Supreme Court has announced four situations where a principal may be liable for punitive damages resulting from an agent's actions: (1) the principal or a managerial agent authorized the act; (2) the agent was unfit and the principal was reckless in employing or retaining the agent; (3) the principal employed the agent in a managerial capacity and the agent acted within the scope of employment; *or* (4) the principal or a managerial

agent ratified or approved the act. *Id.* (adopting the Restatement (Second) of Torts § 909).

Under the *Dahl* scenarios, there is no evidence that Sanford Surgical or one of its managerial agents authorized the procedure, that Dr. Glatt was unfit and Sanford Surgical was reckless in employing or retaining him, or that Sanford Surgical ratified or approved Dr. Glatt's procedure. The parties, however, dispute the third scenario, namely whether Dr. Glatt was employed in a managerial capacity and acted within the scope of his employment when he performed the procedure.

Even though South Dakota generally follows the complicity rule, under the third scenario, the employer need not have knowledge of the manager's actions. "Although there has been no fault on the part of a[n] . . . employer, if a person acting in a managerial capacity . . . does an outrageous act . . . the imposition of punitive damages upon the employer serves as a deterrent to the employment of an unfit person for important positions." Restatement (Second) of Torts § 909 cmt. b.[2] "Basically, under the 'complicity rule,' an employer will

---

[2] For example, "A, a corporation owning a series of retail stores, employs B as operations manager to supervise the management of the units. While visiting a unit, B discovers facts that lead him to believe erroneously that one of the clerks has been stealing. He directs the local manager to imprison the clerk. In the ensuing interview he permits the local manager to use outrageous means of intimidation. In the clerk's action against the corporation, punitive damages can properly be awarded." Restatement (Second) of Torts § 909 illus. 1.

only be liable for punitive damages 'when a superior officer, in the course of his employment, orders, participates in, or ratifies the outrageous conduct.' " *Melfi v. Mount Sinai Hosp.*, No. 122974/02, 2008 WL 1970897, at *6 (N.Y. Sup. Apr. 30, 2008) (quoting *Loughry v. Lincoln First Bank*, 494 N.E. 2d 70, 75 (N.Y. 1986)). Thus, Treib need not show that Sanford Surgical had knowledge of Dr. Glatt's actions; but she must show that Sanford employed Dr. Glatt as an agent in a managerial capacity and that Dr. Glatt acted within the scope of his employment. *Dahl*, 474 N.W.2d at 903.

Under South Dakota law, "[a]gency is the representation of one called the principal by another called the agent in dealing with third persons." SDCL 59-1-1. Agency can be actual or ostensible. SDCL 59-1-4, 59-1-5. Actual agency requires " '[t]he manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking, and the understanding of the parties that the principal is to be in control of the undertaking.' " *Southard v. Hansen*, 376 N.W.2d 56, 58 (S.D. 1985) (quoting *Kasselder v. Kapperman*, 316 N.W.2d 628, 630 (S.D. 1982)). Treib has not set forth sufficient facts to show that Dr. Glatt was an actual agent.

Ostensible agency means that "by conduct or want of ordinary care the principal causes a third person to believe another, who is not actually appointed, to be his agent." SDCL 59-1-5. " '[K]nowledge of and reliance upon circumstances tending to show agency' " is a prerequisite for a third party

16

claiming ostensible agency. *Haberer v. Radio Shack*, 555 N.W.2d 606, 609 (S.D. 1996) (quoting *L.A. McKean Auto Co. v. O'Marro*, 223 N.W. 354, 356 (S.D. 1929)). " 'The third person dealing with the agent, therefore, must show not only damages resulting from his reliance on the appearance of authority, but also reasonable diligence and prudence in ascertaining the fact of the agency and the nature and extent of the agent's authority.' " *Id.* (quoting *Dahl*, 429 N.W.2d at 462).

Under the ostensible agency theory, if a medical provider refers a patient to a certain doctor, ostensible agency can arise. *Davis v. Hoffman*, 972 F. Supp. 308, 313 (E.D. Pa. 1997). Contrastingly, if the patient had an existing relationship with the doctor before the incident giving rise to the suit occurred, the employer is generally not liable.[3] *Id.* If a patient looks to the doctor's employer, and not the doctor, for care, then the employer can be held liable

---

[3] In *Davis v. Hoffman*, the patient sought out the doctor to perform certain procedures to relieve her suffering from a fibroid uterus. 972 F. Supp. at 313. The patient specifically told the doctor not to perform a hysterectomy, but he did it anyway. *Id.* The patient sued the hospital and alleged, among other claims, a violation of her informed consent rights. *Id.* The court found that the patient could assert a punitive damages claim against the hospital because "the removal of her uterus without consent constitutes the reckless indifference or wanton misconduct necessary to support a claim for punitive damages." *Id.* at 313. But the hospital was not liable under an ostensible agency claim because "the plaintiff entered into the physician-patient relationship with Dr. Hoffman well before her admission to the Hospital. The Hospital *did not refer* her to Dr. Hoffman." *Id.* (emphasis added).

under an ostensible agency theory. *Corrigan v. Methodist Hosp.*, 869 F. Supp. 1208, 1213 (E.D. Pa. 1994).

Treib did not seek out a doctor-patient relationship with Dr. Glatt. Treib entered into a doctor-patient relationship with Dr. Maresh, who performed Treib's initial surgery. Dr. Maresh then took leave. Treib did not choose Dr. Glatt. Instead, Sanford Surgical placed Dr. Glatt on Treib's case to perform the necessary aftercare following her surgery by Dr. Maresh. Treib looked to Sanford Surgical for care, not Dr. Glatt. Consequently, a jury could find that Sanford Surgical, by its conduct in putting Treib under Dr. Glatt's care, held Dr. Glatt out as its agent.

In order for Sanford Surgical to be liable, Dr. Glatt also had to act within the scope of his employment. *Dahl*, 474 N.W.2d at 903. Surgeons are generally liable for a patient's aftercare following surgery and Sanford Surgical does not argue that Dr. Glatt was acting outside the scope of his employment.

Sanford Surgical contends that under Treib's theory of managerial capacity, every employer of a doctor would be per se liable for punitive damages, and that would be contrary to South Dakota law. But if a jury believes Treib's version of the facts, this case presents a unique factual scenario. Dr. Glatt told Treib that he would be performing the procedure and then performed the procedure even though Treib verbally opposed the procedure before and during the procedure. The nurses in the room expressed their concern for Dr. Glatt's

actions before and during the procedure, but the nurses stayed in the room and assisted him during the procedure. A jury could find that because the nurses stayed and continued to assist Dr. Glatt even though they opposed his actions and because Dr. Glatt had control over Treib to act against her express objections, he had sufficient control as a manager to find Sanford Surgical liable for his actions.

Moreover, other jurisdictions have found that a doctor's employer can be liable for punitive damages resulting from the doctor's negligent conduct. *See, e.g.*, *Melfi*, 2008 WL 1970897, at *7 (denying summary judgment on whether a hospital was liable for a doctor's negligent conduct under the complicity rule because genuine issues of material fact existed on whether the doctor acted as a manager); *Brown v. LaFontaine-Rish Med. Assocs.*, 33 A.D. 3d 470, 470-71 (N.Y. App. Div. 2006) (upholding, but modifying, a punitive damages award against a doctor's employer for the doctor's negligence); *Siuda v. Howard*, No. C-000656, 2002 WL 946188, at *10-11 (Ohio Ct. App. May 10, 2002) (upholding a jury's award of damages for an ophthalmologist's employer for claims including a medical negligence claim). A doctor's employer's liability for punitive damages extends to the doctor's failure to obtain informed consent. *See, e.g.*, *Zambino v. Hospital of Univ. of Pa.*, No. 06-361, 2006 WL 2803035, at *2 (E.D. Pa. Sept. 25, 2006) (denying a motion to dismiss a hospital's liability for punitive damages

arising from a violation of a patient's informed consent rights); *Corrigan v. Methodist Hosp.*, 869 F. Supp. 1208, 1213 (E.D. Pa. 1994) (same).

The holdings of other jurisdictions employing the complicity rule and the managerial capacity exception is instructive. Treib has alleged sufficient facts that a jury could determine that Dr. Glatt acted as an ostensible agent in a managerial capacity. Accordingly, under these unique facts, summary judgment is denied on the punitive damages claim against Sanford Surgical.

## CONCLUSION

Defendants move for partial summary judgment on Treib's medical negligence, informed consent, respondeat superior, and punitive damages claims, but not her battery claim. Treib acknowledges that summary judgment is proper on the medical negligence claim. Thus, the court grants summary judgment on that claim. Summary judgment is denied on the informed consent claim because genuine issues of material fact remain. Further, summary judgment is denied on the respondeat superior claim against Sanford Surgical for the informed consent claim, but granted on the battery claim. Summary judgment is also improper on the punitive damages claim because genuine issues of material fact exist on whether Dr. Glatt acted with the requisite malice and if a reasonable person in Treib's position would think that Dr. Glatt was acting in a managerial capacity. Accordingly, it is

ORDERED that defendants' motion for summary judgment (Docket 19) is denied in part and granted in part.

Dated December 7, 2010.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE